Matthew Hutchison
RAMLOW & RUDBACH, PLLP
542 Central Ave.
Whitefish, MT 59937
Telephone: (406) 862-7503
Fax: (406) 862-7530
matt@ramlowrudbach.com

Attorneys for Plaintiff
Atlantic Casualty Insurance Company

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY | |
| **Plaintiff,** | Cause No. |
| vs. | **COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT** |
| Peggy Quinn, Kevin Quinn, Brunner Homes and Construction, Inc., and John Does 1 through 10. | |
| **Defendants.** | |

Plaintiff, Atlantic Casualty Insurance Company, by and through its counsel of record, hereby files its Complaint and Request for Declaratory Judgment ("Complaint"), and for its Complaint alleges as follows:

1.    Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty") is a corporation organized and existing under and by virtue of the laws of the state of

*Complaint for Declaratory Judgment*                                *Page 1 of 24*

North Carolina. Its principal place of business is in Goldsboro, North Carolina.  As such, Plaintiff is a resident of North Carolina.

2.  Defendant Peggy Quinn, upon information and belief, is a resident of Missoula County, Montana.

3.  Defendant Kevin Quinn, upon information and belief, is a resident of Missoula County, Montana.

4.  Defendant Brunner Homes and Construction, Inc. ("Brunner Homes"), upon information and belief, is a Montana domestic corporation doing business in Missoula County, Montana.

5.  Defendant John Does 1 - 10 are potential defendants who have not yet been identified but who may ultimately have an interest herein and may be proper and/or necessary parties to this action.

6.  Brunner Homes procured an Atlantic Casualty Commercial General Liability Policy, policy number L138005797 ("The Policy").  The Policy was effective February 7, 2015 to February 7, 2016, the terms of which are incorporated herein by this reference and referred to as "the Policy."[1]

7.  The policy contains a limit of liability of $1,000,000 per occurrence.

8.  Brunner Homes, Atlantic Casualty's insured, is a defendant in a lawsuit filed in the Montana Fourth Judicial District, Missoula County, entitled *Peggy and Kevin*

---

[1]The Policy is incorporated by this references as though fully set forth herein.

*Quinn v, Brunner Homes and Construction et al,* DV 17 960 ("the Underlying

Lawsuit").  The Underlying Complaint is attached as Exhibit A.

### JURISDICTION AND VENUE

9.      Venue is proper pursuant to 28 U.S.C. Section 1391 because the underlying

lawsuit is venued in Missoula County, State of Montana; the insurance policy at

issue in this declaratory judgment action was issued in the state of Montana; the

underlying lawsuit involves real property located in Missoula County, Montana;

the damages alleged in the underlying lawsuit occurred in Missoula County,

Montana; and the contracts and obligations at issue in this case must be interpreted

under Montana law.

10.     Subject matter jurisdiction is based on 28 U.S.C. Section 1332. This action

involves a controversy between citizens of different states and the amount in

controversy exceeds $75,000.00.

11.     Subject matter jurisdiction is alternatively based on the Declaratory Judgment Act,

28 U.S.C. Section 2201(a).

### THE UNDERLYING LAWSUIT

12.     In the underlying lawsuit, Peggy Quinn and Kevin Quinn ("the Quinns") assert that

they hired Brunner Homes to construct them a new home in Missoula County,

Montana.

13.     On June 29, 2015 Quinns entered into an agreement with Brunner for the

construction of a home on Lot 2A Upland Trail, now 10450 Upland Trail.

14.     The price of the home was $745,688.98.

15.     Quinns took occupancy of the home but claim that defects exist that have not been

        cured.

16.     On September 25, 2017, Quinns filed the Underlying Lawsuit.  Quinns allege

        unspecified construction defects to roof, concrete, deck, drywall, plumbing, trim,

        pain, windows, doors, tile, venting, leaking and cracking.

17.     Atlantic Casualty retained Montana law firm Spoon Gordon Ballew, PC, to defend

        its insured, Brunner Homes, in the Underlying Lawsuit under a reservation of

        rights.

18.     Brunner Homes, through insurance defense counsel, engaged the Quinn litigation

        and filed its Answer and Counterclaim in the Underlying Lawsuit on or about

        November 7, 2017.

19.     Quinns allege Brunner Homes was negligent and breached the contract in that its

        work was unsatisfactory, as follows:

        Work performed on the home by Defendant Brunner was or remains
        substandard, was not performed in a workmanlike manner, and was not in
        accord with the industry's best customs and practices.  The construction
        issues include, but are not limited to: the roof, concrete, the deck, drywall,
        plumbing, trim work, paint, windows, doors, tile, venting, leaking, and
        cracking.

        Exh. A, *Underlying Complaint*, ¶ 11.

        The Agreement also contains a warranty that all materials, equipment,

and/or labor furnished on the Project shall be "new and shall be merchantable, free of defects and fit for the particular purposes for which they have been furnished. Contractor will replace and repair at Contractor's sole expense, any such materials, equipment, appliances and/or labor which do not comply" with those warranties.

Exh. A, *Underlying Complaint*, ¶ 12.

20.     The Quinns also maintain Brunner Homes breached the implied covenant of good faith and fair dealing (Count IV), made various tortious misrepresentations about its workmanship (Counts V and VI), and that it engaged in unfair and deceptive trade practices (Count VII).

21.     The Quinns are withholding final payment on the construction agreement.

22.     The Quinns claim the construction agreement required Brunner Homes to complete the work within 300 days from the commencement date under the contract.

23.     As part of their claim for damages, Quinns rely on a *per diem* penalty provision inserted into the construction contract which, according to Quinns, requires Brunner Homes to pay to Quinns a penalty of $3,728.45 per day because of the delay in completing the work.  *See* Exhibit A, ¶ 9.

24.     Quinns contend that, as a result of the penalty provision found in the construction contract, their damages have reached $2,457,048.55 as of March 15, 2018, and continue to increase by $3,728.45 every single day.

25.     This contract provision states, in pertinent part:

**Article 2.  Time of Completion.**

In the event Contractor fails to complete the Project on or before the Completion Date through no fault of Customer, Contractor shall be responsible to reimburse Customer .5% of the Contract Price per day. Customer shall have a right of set off against the Contract Price for any sums due from Contractor to Customer for failure to complete the Project on or before the Completion Date.

26.   On March 15, 2018, Quinns, through counsel, demanded settlement for the Policy's one million dollar limits.

27.   Quinns informed that if Brunner Homes did not settle for the Atlantic Casualty Policy limits of One Million Dollars ($1,000,000), Quinns would do the following: (a) accept a consent judgment from Brunner Homes; (b) accept an assignment from Brunner Homes of its claims against Atlantic Casualty; and, (c) covenant not to execute upon Brunner Homes' assets to satisfy the consent judgment.

### COUNT I: REQUEST FOR DECLARATORY JUDGMENT.

28.   Atlantic Casualty restate and re-alleges as though fully set forth herein paragraphs 1 through 28 of this Complaint.

29.   The parties to this lawsuit dispute whether coverage exists under the Policy for the claims asserted by Quinns against Brunner Homes in the underlying lawsuit.

30.   This action seeks a declaration as to Atlantic Casualty's obligations to defend and/or indemnify Atlantic Casualty's insured, Brunner Homes, for the claims asserted by Quinns.

31.   An actual controversy exists between Atlantic Casualty, its insured and Quinns, in

that Atlantic Casualty believes that the claims asserted by Quinns fall outside the

scope of coverage of the Policy and that exclusions unequivocally preclude

coverage.

32.     The Policy contains the following pertinent provisions:

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to
pay as damages because of "bodily injury" or "property damage" to
which this insurance applies. We will have the right and duty to defend
the insured against any "suit" seeking those damages.  However, we
will have no duty to defend the insured against any "suit" seeking
damages for "bodily injury" or "property damage" to which this
insurance does not apply.  We may, at our discretion, investigate any
"occurrence" and settle any claim or "suit" that may result. But:

> (1) The amount we will pay for damages is limited as described in Section
> III - Limits Of Insurance; and

> (2) Our right and duty to defend ends when we have used up the applicable
> limit of insurance in the payment of judgments or settlements under
> Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services
is covered unless explicitly provided for under Supplementary Payments -
Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only
if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence"
> that takes place in the "coverage territory";

> (2) The "bodily injury" or "property damage" occurs during the policy
> period;

**2. Exclusions**

This insurance does not apply to:

* * *

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

**j. Damage To Property**

"Property damage" to:

* * *

*Complaint for Declaratory Judgment*                              *Page 8 of 24*

(5) That particular part of real property on which you or any
contractors or subcontractors working directly or indirectly on
your behalf are performing operations, if the "property damage"
arises out of those operations; or

(6) That particular part of any property that must be restored,
repaired or replaced because "your work" was incorrectly
performed on it.

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it
and included in the "products-completed operations hazard".
This exclusion does not apply if the damaged work or the work out of
which the damage arises was performed on your behalf by a
subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not
been physically injured, arising out of:

(1) A deject, deficiency, inadequacy or dangerous condition in
"your product" or "your work",· or

(2) A delay or failure by you or anyone acting on your behalf to
perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other properly
arising out of sudden and accidental physical injury to "your product"
or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or
others for the loss of use, withdrawal, recall, inspection, repair,

replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

* * *

## SECTION V - DEFINITIONS

* * *

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

    a. The repair, replacement, adjustment or removal of "your product" or "your work",· or

    b. Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**16.** "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will he deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to he done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, hut which is otherwise complete, will he treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence al tools, uninstalled equipment or abandoned or

unused materials; or

(3) Products or operations/or which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

* * *

**21.** "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of" "your product";

and

(2) The providing of" or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":
a. Means:

(1) Work or operations pe1formed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.


The policy has Exclusions/Limitations, which include the following language:

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

**CONDITION - INDEPENDENT CONTRACTORS AND SUBCONTRACTORS**

The classifications used in this policy containing the word "Contractors Subcontracted Work" apply to that portion of the operations performed for or on behalf of any insured by independent contractor(s) or subcontractor(s). There is no coverage for that portion of the operations performed for or on behalf of any insured by independent contractor(s) or subcontractor(s) unless Condition A or Condition B is met.

If Condition A or Condition B is not met, then this insurance does not apply to any claims, loss, costs or expense arising out of or related to the

action(s) or inaction(s) of independent contractors or subcontractors by
or on behalf of any insured; or for the negligent hiring, training,
supervision, direction, inspection, investigation, management or retention
of independent contractors or subcontractors on behalf of any insured.

Condition A.

This insurance does not apply to any claim arising from subcontracted
work unless the insured can demonstrate:

1) The independent contractor or subcontractor maintains insurance in
force for his operations with at least the following Limits of Liability:

A. General Aggregate Limit

(Other than Products Completed Operations) $1,000,000
Products Completed Operations Aggregate Limit $1,000,000
Each Occurrence Limit $1,000,000

B. Or the limits provided by this policy, whichever are less; and

2) A hold harmless agreement in favor of you has been executed with the
independent contractor or subcontractor, for their negligence or
fault, the breach or violation of a statute, ordinance, governmental
regulation, standard, or rule, or the breach of contract of
subcontractor, its agent or employee, or any third party under the
control or supervision of the independent contractor or subcontractor;
and

3) You are endorsed to the independent contractor's or subcontractors'
Commercial General Liability policy as an additional insured/or the
independent contractor's or subcontractors' negligence or fault, the
breach or violation of a statute, ordinance, governmental regulation,
standard, or rule, or the breach of contract of subcontractor, its agent
or employee, or any third party under the control or supervision of the
independent contractor or subcontractor; and

4) You will obtain Certificates of Insurance from each independent
contractor or subcontractor with evidence verifying the requirements
of paragraphs 1 and 3 above. These certificates must he kept on file

for a minimum of ten years.

Condition B.

If we verify operations were performed by independent contractor(s) or subcontractor(s) and they did not meet Condition A. we will use the total cost of work performed for you by such independent contractor or subcontractor as if it were payroll to calculate the appropriate premium for the specific classification based on our rates and rules in effect as of the inception date of the policy.  It is your responsibility to pay any additional premium due.
**AGL-130 9113**

## CLASSIFICATION LIMITATION

This insurance does not apply to and no duty to defend is provided/or "bodily injury," "property damage, "personal and advertising injury" or medical payments unless the insured can demonstrate the "bodily injury," "property damage," "personal and advertising injury" or medical payments arise out of the classification(s) shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements. The parties agree the definition(s) used for the classification(s) in the policy are those defined and maintained by the Insurance Services Office (ISO).
**AGL-015 05-14**

## CLASSIFICATION - REMODELING

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
The Remodeling Classification shown on the General
Liability Declarations Page includes only those classes
shown in the Schedule below.

**SCHEDULE**

| CLASSIFICATION | CODE NO. |
|---|---|
| Carpentry - *NOC* | 91342 |
| *Carpentry- Interior* | 91341 |
| *Carpentry-Construction of Residential Property not exceeding three (3) stories in height* | 91340 |
| *Ceiling or Wall installation- Metal* | 91436 |
| *Door, Window or Assembled Mil/work- Installation, Metal* | 91746 |
| *Driveway, Parking Area or Sidewalk- paving or repaving* | 92215 |
| *Dry Wall or Wallboard Installation Fence* | 92338 |
| *Erection Contractor* | 94276 |
| *Floor Covering Installation- Not Ceramic, Tile or Stone* | 94569 |
| *Home Furnishings Installation* | 96053 |
| *Insulation Work - Mineral* | 96410 |
| *Insulation Work- Organic or Plastic in Solid State* | 96409 |
| *Irrigation or Drainage System Construction* | 96702 |
| *Landscape Gardening - Including Products and/or Completed Operations subject to the General Aggregate Limit.* | 97047 |
| *Janitorial Services - Including Products and/or Completed Operations subject to the General Aggregate Limit.* | 96816 |
| *Lawn Care Services - Including Products and/or Completed Operations subject to the General Aggregate Limit.* | 97050 |
| *Masonry* | 97447 |
| *Painting- Exterior -Buildings or Structures* - three (3) stories or less in height | 98304 |
| Painting- Interior-Buildings or Structures Paperhanging | 98305 |
| Plastering or Stucco Work Siding | 98344 |
| Installation | 98449 |
| Tile, Slate, Marble, Mosaic or Terrazzo Work- Interior Construction | 98967 |
|  | 99746 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN

UNCHANGED. AGL-REM 6-15


## LIMITATION - DUTY TO DEFEND

Where there is no coverage under this policy, there is no duty to defend any insured.

Our determination regarding a defense obligation under this policy may be made on documentation, evidence, or information extrinsic to any complaint or pleading presented to us, provided such documentation, evidence or information does not contradict a pleaded allegation and provided such documentation, evidence or information relates solely to a discrete coverage issue under this policy.

For those qualifying as an additional insured by way of an additional insured endorsement, we have the right, but not the duty, to defend **AGL-056 3113**


## AMENDED DEFINITION-PROPERTY DAMAGE

Paragraph **17 of SECTION V - DEFINITIONS** is replaced by the following:

17. "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured All such loss of use shall he deemed to occur at the time of the "occurrence" that caused ii.

However, "property damage" does not include breach of contract, breach

*Complaint for Declaratory Judgment*                    *Page 18 of 24*

of any express or implied warranty, deceptive trade practices or violation of any consumer protection laws.

"Property damage" does not include any cost or expense to repair, replace or complete any work to any property that you, or any insured, are otherwise obligated to repair, replace or complete pursuant to the terms of any contract.

For the purposes of this insurance, electronic data is not tangible properly.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.
**AGL-106 3113**


**EXCLUSION -MOLD, BACTERIA, VIRUS AND ORGANIC PATHOGEN LIABILITY**

This insurance does not apply to any claim, loss, costs or expense arising from any actual or alleged:

(1) "bodily injury, " "property damage" or "personal and advertising injury;

(2) damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space; or

(3) fines, penalties and attorney fees, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens;" or

(4) litigation or administration procedure in which any insured may be involved as a party;

arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release or escape of "organic pathogens," whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

In addition, this insurance does not apply to any alleged "bodily injury," "property damage, " "personal and advertising injury, " loss, costs or expense including but not limited to fines, penalties and attorney fees, arising out of or related to any form of "organic pathogens," whether or not such actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release or escape is negligently or intentionally caused by any person or entity and whether or not the liability of any insured is alleged to be direct or vicarious. This exclusion also applies whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of any insured

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, biogenic aerosol or scent.
AGL-054 31I3


**EXCLUSION -EXPECTED OR INTENDED**

Exclusion 2. a. of SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of any insured

AGL-068- 03113

33.　　　Quinns have not alleged that they suffered "property damage" as a result of Brunner Homes' allegedly defective workmanship nor have they alleged an "occurrence" that caused "property damage."

34.　　　Quinns allege they have been damaged because Brunner Homes supposedly did not perform its work correctly.

35.　　　The Policy does not apply to correct deficiencies in "your work" or "your product" as alleged by Quinns.

36.　　　Quinns' claimed damages were caused by the alleged delay or the failure by Brunner Homes to perform the contract or agreement with Quinns in accordance with its terms, which is not covered by the Policy.

37.　　　The Policy does not apply to "bodily injury" or "property damage" for which the insured is obligated to pay damages due to breach of contractual obligation.

38.　　　The Policy does not apply to "property damage" to "impaired property" arising out of a delay or failure by the insured or anyone acting on the insured's behalf to perform a contract or agreement in accordance with its terms, as alleged by Quinns.

39.　　　Property damage covered by the Policy does not include breach of contract, breach of any express or implied warranty, deceptive trade practices or violation of any consumer protection laws.

40.　　　Further, the Policy does not apply to repair or replace "impaired property" that

incorporates "your work" or "your product" as alleged by Quinns.

41.    The Policy does not apply to guarantee "your work" or "your product" with regard to durability, timely and proper completion, quality or performance, as alleged by Quinns.

42.    The Policy does not apply to warranties and representations related to "your work."

43.    The Policy does not apply to coverage for "property damage" for cost or expense to repair, replace, or complete any work to any property that Brunner Homes is otherwise obligated to repair, replace or complete pursuant to the terms of any contract with any person.

44.    The Policy does not apply to claims, loss, costs or expense that result from the actions of any insured's subcontractor or independent contractor unless specific conditions are met as set forth above.

45.    The Policy does not apply to the damages claimed unless they arise out of operations classified on the Commercial General Liability Coverage Declarations, its endorsements or supplements.

46.    The Policy classifies the Insured's operations as: AGL REM Remodeling, Carpentry NOC, Contractors Subcontracted Work.

47.    The Policy was classed and rated on this basis. There is no coverage for damage arising out of operations that are not listed above.

48.     Quinns' alleged damages are from a loss, cost or expense incurred for the loss of use, repair, replacement, adjustment, removal or disposal of Brunner Homes' product, work, and/or impaired property because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

49.     Quinns' alleged faulty and/or defective construction of the house which caused that particular part of the property to be restored, repaired or replaced because Brunner Homes' work was incorrectly performed on it, is not covered by the Policy.

50.     Quinns' alleged damages are to impaired property or to property that was not physically injured and arose out of an alleged defect, deficiency, inadequacy or dangerous condition in Brunner Homes' product or work.

51.     Quinns' alleged damages are from "property damage" that are expected or intended from the standpoint of the Insured.

52.     The Policy does not apply to any litigation in which any insured is a party arising directly, indirectly or in concurrence or in any sequence out of actual, alleged or threatened existence, exposure to, discharge, dispersal, release or escape of any "organic pathogen" including, but not limited to, fungus, mold and mildew.

53.     In addition, Quinns' claims are or would be excluded from coverage based on one or all of the exclusions stated above.  Other policy exclusions may apply.

54.     By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities, if any, which exist as to the Atlantic Casualty Commercial General Liability Policy, number L138005797.

WHEREFORE, Atlantic Casualty Insurance Company prays for a judgment declaring the following:

a.     That the claims in the Underlying Lawsuit are not covered or are excluded from coverage under the Policies;

b.     That Atlantic Casualty has no duty to defend the Insured against the claims in the Underlying Lawsuit;

c.     That Atlantic Casualty has no duty to indemnify the Insured against the claims in the Underlying Lawsuit;

d.     That all parties shall bear their own costs and fees; and

e.     Any other relief the Court deems appropriate.

**DATED** this 20th day of April, 2018.

RAMLOW & RUDBACH, PLLP

 /s/ Matthew K. Hutchison
Matthew K. Hutchison
Attorneys for Plaintiffs

*Complaint for Declaratory Judgment*                                    *Page 24 of 24*