IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>PEGGY QUINN, KEVIN QUINN, BRUNNER HOMES AND CONSTRUCTION, INC., and JOHN DOES 3 through 10,<br><br>Defendants. | CV 18–76–M–DWM<br><br>OPINION AND ORDER |

Plaintiff Atlantic Casualty Insurance Company ("Atlantic") seeks a declaratory judgment that it has no duty to defend or indemnify its insured Brunner Homes and Construction ("Brunner") in an underlying lawsuit brought by homeowners Peggy and Kevin Quinn ("the Quinns"). (Doc. 1.) Pending before the Court are Atlantic and Brunner's cross-motions for partial summary judgment. (Docs. 23, 30, 50.) A hearing was held in Missoula, Montana on June 20, 2019. Ultimately, Atlantic has a duty to defend Brunner against all claims in the underlying complaint. However, Atlantic does not have a duty to indemnify Brunner for the liquidated damages, breach of warranty, Montana Consumer Protection Act, and emotional distress claims. Factual issues preclude summary

judgment on Atlantic's duty to indemnify Brunner for the other claims. Consequently, the issue of indemnity on those claims is held in abeyance until the underlying state case is resolved.

**BACKGROUND**

The Quinns entered into a contract with Brunner on June 29, 2015, for the construction of a $745,688.98 custom home in Missoula. (Doc. 36-4 at 17–23.) The contract required Brunner to complete the home no later than 300 days after work commenced—by May 24, 2016 ("the Completion Date"). (*See id.* at 18.) However, the Completion Date was permissibly subject to delays resulting from any change orders the Quinns issued during the construction period. (*Id.*) Barring any change orders, Brunner agreed to finish the home no later than the Completion Date or else be responsible for .5% of the contract price for every day beyond that date that the home remained unfinished. (*Id.*)

On September 25, 2017, the Quinns sued Brunner in state court for negligence, breach of contract, and construction default, among other things. (Doc. 36-1.) The Quinns allege the home was not satisfactory for habitation by the Completion Date. (Doc. 36-4 at 4–5.) As part of their claim for damages, the Quinns assert that Brunner must pay $3,728.45 per day for each day past the Completion Date that the home remains substandard. (*Id.* at 8.) The Quinns thus allege that as of April 27, 2018, Brunner owes $2,624,828.80 for the delay on the

home, accruing at a rate of $3,728.45 each day. (*Id.*)

Brunner was insured by Atlantic at all relevant times. (*See* Doc. 35 at 3.) Brunner notified Atlantic of the Quinns' lawsuit on October 6, 2017. (Doc. 36-5.) On November 14, 2017, Atlantic informed Brunner on at least one Atlantic policy that it would defend under a complete reservation of rights. (Doc. 36-2.)

On April 20, 2018, Atlantic filed suit in this Court, seeking a declaration that it has no duty to defend or indemnify Brunner in the underlying lawsuit. (Doc. 1.) It moved for partial summary judgment on its duties to defend and indemnify against the underlying complaint's breach of contract claims on November 21, 2018. (Doc. 23.) It moved for summary judgment on its duty to defend and indemnify against all twelve counts of the underlying complaint on January 4, 2019. (Doc. 30.) Brunner filed a cross-motion for summary judgment on the duty to defend on April 1, 2019. (Doc. 50.)

**LEGAL STANDARDS**

I. **Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all evidence and draw all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II. Contract Interpretation

The substantive law of Montana applies to this diversity action. *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 812 (9th Cir. 2002). Interpretation of a contract or an insurance policy is a question of law. *Wendell v. State Farm Mut. Auto Ins. Co.*, 974 P.2d 623, 627 (Mont. 1999). Even so, "[e]ach case turns on its precise individual facts," which play a significant role in determining whether coverage under an insurance contract exists. *Id.* at 637 (internal quotation marks omitted). Contracts are interpreted "according to their usual, common-sense meaning" viewed from the perspective of the insured, who is treated as a consumer of average intelligence with no training in the law or in insurance. *Id.* at 628; *Hanson v. Emp'rs Mut. Ins. Co.*, 336 F. Supp. 2d 1070, 1075 (D. Mont. 2004). Exclusions from coverage are construed narrowly. *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). Ambiguities are construed in favor of the insured and against the insurer. *Id.*

## III. Duties to Defend and Indemnify

"The duty to defend is independent from and broader than the duty to indemnify created by the same insurance contract." *Id.* An insurer's duty to indemnify arises only if there is coverage under the policy. *State Farm Fire & Cas. Ins. Co. v. Schwan*, 308 P.3d 48, 51 (Mont. 2013). The duty to defend, however, "is triggered when a complaint against an insured alleges facts, which if

4

proven, would result in coverage." *Id.* (internal quotation marks omitted). Allegations in the complaint must be liberally construed so that any doubts regarding coverage are resolved in favor of finding a duty to defend. *Farmers Union*, 90 P.3d at 385. An insurer is presumed to have a duty to defend, absent an "unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage." *Id.* Further, Montana follows "the 'mixed action' rule, which requires an insurer to defend against all counts in a complaint so long as one count potentially triggers coverage, even if the remaining counts would not be covered." *State Farm*, 308 P.3d at 51 (internal citation omitted).

## ANALYSIS

To prevail at summary judgment, Atlantic must show that none of the Quinns' claims against Brunner are or could be covered by the relevant insurance policy.[1] Atlantic has shown the Quinns' claims for liquidated damages, breach of warranty, Montana Consumer Protection Act violations, and emotional distress are not covered. Factual issues preclude summary judgment on the remaining claims.

---

[1] Brunner and the Quinns dispute that Atlantic properly reserved its rights under the applicable policies. Brunner tendered defense of the claim under "policy number L138007923-0, or any other applicable policy issued by Atlantic." (Doc. 36-5.) Atlantic agreed to defend Brunner under a complete reservation of rights "under the policies" and determined policy number L138005797 applied to the period at issue. (Doc. 36-2 at 2.) It is clear Atlantic reserved its rights under all the potentially applicable policies. Further, as Brunner admits, the policy language is nearly identical, and the analysis is the same regardless of which policy applies.

However, because the possibility of coverage exists as to at least some claims, Atlantic has a duty to defend against all claims under the mixed action rule.

## I. Negligence (Count I)

Count I of the underlying complaint alleges Brunner was negligent in constructing the Quinns' home.[2] (Doc. 36-4 at 6–7.) Put simply, the Quinns allege faulty workmanship. Atlantic argues the alleged negligence is not covered under the policy because faulty workmanship is not an "occurrence." Alternatively, Atlantic argues that even if faulty workmanship were an occurrence, the resulting property damage is excluded from coverage by Exclusion 2(j)(6), and the Products-completed operations hazard exemption, which could restore coverage, does not apply. Both arguments fail.

### A. Negligence as an Occurrence

Atlantic argues faulty workmanship is not a covered occurrence because it is not a fortuitous event. Atlantic is incorrect. The policy covers bodily injury and property damage caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 24-2 at 34.) Accident is undefined. The Montana Supreme Court, considering identical policy language, established a test for when

---

[2] Count II of the underlying complaint alleges negligence against Brunner's subcontractors, and does not seem to have any bearing on the present motions. (Doc. 36-4 at 7.)

6

an act is an occurrence in *Employers Mutual Casualty Co. v. Fisher Builders, Inc.*, 371 P.3d 375, 378–79 (Mont. 2016). The *Fisher Builders* test asks "1) whether the act itself was intentional, and 2) if so, whether the consequence or resulting harm stemming from the act was intended or expected from the actor's standpoint." *Id.* at 378. "If the answer to either question is 'no,' the act is an occurrence." *W. Heritage Ins. Co. v. Slopeside Condo. Ass'n, Inc*., CV 17–162, 2019 WL 1060704, at *2 (D. Mont. Mar. 3, 2019). As this Court recognized in *Western Heritage*, faulty workmanship can be an occurrence under *Fisher Builders* if the consequences were not objectively intended or expected by the insured, notwithstanding the work was intentional. *Id.*

Here, the record is sparse regarding Brunner's alleged faulty workmanship. The Quinns' underlying complaint merely makes general allegations that construction issues with "the roof, concrete, the decks, drywall, plumbing, framing, trim work, paint, windows, doors, tile, venting, leaking, and cracking" have "resulted in water damage, water stains, destruction of personal property, stained floors, damage to a range hood, and other damage to tangible personal property." (Doc. 36-4 at 4.) Nevertheless, Atlantic has not adduced any evidence that a contractor in Brunner's position would have intended or expected these damages. *See Fisher Builders*, 371 P.3d at 378. Accordingly, factual development is needed

7

to determine whether Brunner's alleged faulty workmanship is a covered occurrence.

B.  **Exclusion 2(j)(6) and the Products-completed Operations Hazard**

Atlantic argues that even if Brunner's alleged faulty workmanship were an occurrence, the resulting property damage is not covered because of Exclusion 2(j)(6).  Exclusion 2(j)(6) removes from coverage "property damage" to property "that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (Doc. 24-2 at 25.)  However, the Products-completed operations hazard restores coverage for property damage that occurs after the work is completed. (*Id.* at 34.)  "Completed" means all work called for in the contract is finished or the site has been "put to its intended use by any person or organization other than another contractor or subcontractor working on the same project." (*Id.*)  Additionally, "[w]ork that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." (*Id.*)

Atlantic argues the Products-completed operations hazard is inapplicable because the Quinns' home was not completed, but the record suggests otherwise. Specifically, the Quinns' discovery requests indicate they took occupancy of the home, putting it "to its intended use." (Doc. 47-1 at 12 (indicating the Quinns live in the home under a temporary occupancy permit).)  The Products-completed operations hazard, then, provides coverage for property damage that occurred after

8

the home was completed. However, Exclusion 2(j)(6) still functions to exclude property damage that occurred during Brunner's work on the home. *See Northland Cas. Co. v. Mulroy*, 357 F. Supp. 3d 1045, 1049 (D. Mont. 2019) (explaining the Products-completed operations hazard "depends on timing").

The record is unclear as to when the alleged property damage occurred. As with whether Brunner's alleged faulty workmanship is a covered occurrence, factual development is needed to determine whether the alleged property damage is excluded under Exclusion 2(j)(6) or covered under the Products-completed operations hazard. Accordingly, summary judgment on Atlantic's duty to indemnify Brunner for the alleged negligence is improper. However, because coverage is a possibility, Atlantic has a duty to defend Brunner against the Quinns' negligence claims, *see Farmers Union*, 90 P.3d at 385, and the mixed-action rule requires Atlantic to defend against the other claims in the underlying complaint, *see State Farm*, 308 P.3d at 51.

## II. Breach of Contract (Counts III and V)

Count III of the underlying complaint alleges Brunner breached its contract with the Quinns. (Doc. 36-4 at 8–9.) Count V alleges Brunner breached the implied covenant of good faith and fair dealing. (*Id.* at 10.) Counts III and V are subject to the same analysis here because a breach of the implied covenant of good faith and fair dealing is analyzed as a breach of contract. *McCoy v. First Citizens*

*Bank*, 148 P.3d 677, 681 (Mont. 2006). Atlantic argues the alleged breach of contract is not a covered occurrence under the policy. Further, Atlantic argues the liquidated damages accruing at .5% of the purchase price of the home per day are not covered property damages.

The parties focus on whether a breach of contract in the abstract can ever be an occurrence, but the proper inquiry is whether the conduct underlying the breach is an occurrence. *See Town of Geraldine v. Mont. Mun. Ins. Auth.*, 198 P.3d 796, 800 (Mont. 2008) ("[I]t is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language."). Here, the record is unclear as to Brunner's conduct, which makes applying the *Fisher Builders* test for an occurrence difficult. Some of the breach of contract allegations are duplicative of the negligence allegations. For example, the Quinns allege Brunner breached the contract in part by failing to "perform all work in a good and workmanlike manner." (Doc. 36-4 at 9.) This is essentially an allegation of faulty workmanship, which, as discussed above, may be an occurrence under *Fisher Builders*, though factual development is needed to determine whether it is an occurrence here. The other allegations are even harder to analyze on such a sparse record. For example, the Quinns also allege Brunner breached the contract by failing to abide by the Completion Date. (*Id.*) Brunner claims the delay was due to the Quinns' change orders, and therefore was not intentional. However,

10

Brunner has not offered any change orders or other evidence to support its contention. At this point, the record does not allow a ruling on whether the conduct underlying Brunner's alleged breach of contract constitutes an occurrence.

Atlantic argues that even if failing to meet the Completion Date is an occurrence, the resulting liquidated damages—$3,728.45 per day—are not covered property damages. As discussed above, the policy covers property damage and bodily injury caused be an occurrence. (Doc. 24-2 at 22.) "Property damage" refers to "[p]hysical injury to tangible property, including all resulting loss of use of that property" and the "[l]oss of use of tangible property that is not physically injured." (*Id.* at 55.) "However, 'property damage' does not include breach of contract, breach of any express or implied warranty, deceptive trade practices or violation of any consumer protection laws." (*Id.*)

Brunner and the Quinns argue the liquidated damages reflect "loss of use" of the home due to the delay. A different take is that the liquidated damages provision is a penalty. But, as Atlantic contends, the liquidated damages are purely economic. The liquidated damages provision in the contract between the Quinns and Brunner is divorced from any facts, apart from the home price, and does not purport to be compensation for loss of use, or any other damages, resulting from the delay. Further, the "usual, common-sense meaning" of the policy's exclusion of "breach of contract" from the definition of "property damage," while not the

11

model of clarity, is that purely contractual damages are not covered. *See Wendell*, 974 P.2d at 628. Accordingly, the liquidated damages accruing at .5% of the home price per day are not covered under the policy and Atlantic has no duty to indemnify Brunner for those damages. However, whether Atlantic has a duty to indemnify Brunner for the remaining breach of contract and implied warranty claims cannot be determined as a matter of law at this time.

### III. Breach of Warranty (Count IV) and Violations of Montana Consumer Protection Act (Count VIII)

Count IV of the underlying complaint alleges Brunner breached an express warranty that all materials, equipment, appliances, and labor would be free from defects and breached the implied warranty of habitability. (Doc. 36-4 at 9.) Count VIII alleges Brunner violated Montana's Consumer Protection Act. (*Id.* at 12.) The policy explicitly provides that "'property damage' does not include breach of contract, breach of any express or implied warranty, deceptive trade practices or violation of any consumer protection laws." (Doc. 24-2 at 55.) Accordingly, Atlantic has no duty to indemnify for the alleged breaches of warranty or alleged violations of the Montana Consumer Protection Act.

### IV. Misrepresentation and Fraud-Based Claims (Counts VI and VII)

Count VI of the underlying complaint alleges Brunner negligently misrepresented material facts regarding the quality of construction, the Completion Date, and repairing deficiencies. (*Id.* at 10–11.) Count VII alleges Brunner

12

engaged in constructive fraud by representing it would repair defects on the home and subsequently failing to do so. (*Id.* at 11.) Atlantic argues these claims are based on the same conduct underlying the breach of contract claims, and therefore do not allege covered occurrences. The record is unclear as to the content and circumstances of Brunner's alleged misrepresentations and fraudulent statements. Accordingly, whether they constitute occurrences under *Fisher Builders* cannot be determined as a matter of law at this time.

## V. Negligent and/or Intentional Infliction of Emotional Distress (Count IX)

Count IX of the underlying complaint alleges Brunner caused emotional distress to Peggy Quinn that manifested as physical injuries, "including anxiety, shaking, loss of sleep, panic attacks, insomnia, exhaustion, stress, hot flashes, and worry." (Doc. 36-4 at 6, 12–13.) Atlantic argues this is not covered "bodily injury" because the policy excludes "costs or expense arising out of emotional distress . . . unless it arises out of physical injury that occurs to that person." (Doc. 24-2 at 40.) The Quinns concede this claim is not covered. (Doc. 45 at 14.) Here, though the Quinns have alleged physical symptoms of Peggy Quinn's emotional distress, they have not alleged that her emotional distress arose out of a physical injury caused by Brunner, as required by the policy. Accordingly, Peggy Quinn's emotional distress is not covered and Atlantic has no duty to indemnify Brunner for emotional distress damages awarded in the underlying suit.

## VI. Unjust Enrichment (Count X)

Count X of the underlying complaint alleges Brunner was unjustly enriched by its retention of payment despite defects in construction. (Doc. 36-4 at 13.) Atlantic argues equitable relief is not covered under the policy. (*See* Doc. 24-2 at 22 (limiting the policy to damages for "bodily injury" and "property damage").) Neither the Quinns nor Brunner dispute this contention. Accordingly, Atlantic has no duty to indemnify Brunner for the Quinns' unjust enrichment claim.

## VII. Residential Construction Defect (Count XI)

Count XI of the underlying complaint alleges the Quinns are entitled to damages under Mont. Code Ann. § 70–19–428. (Doc. 36-4 at 13–14.) Section 70–19–428 allows homeowners to recover enumerated damages proximately caused by a construction defect, including the reasonable cost of repairs, the reasonably necessary cost of temporary housing, the reduction in market value, and reasonable costs and attorney fees. Atlantic argues this count does not allege an occurrence. However, what matters is the conduct underlying the cause of action, not the specific legal theory. *See Town of Geraldine*, 198 P.3d at 800. The statutory construction defect claim is merely an allegation of faulty workmanship. As discussed above, factual issues preclude summary judgment on whether Brunner's alleged faulty workmanship is a covered occurrence.

## VIII. Negligent Retention/Hiring/Supervision (Count XII)

Count XII of the underlying complaint alleges Brunner negligently selected and supervised contractors. (Doc. 36-4 at 14.) This is essentially a claim that Brunner is responsible for its subcontractors' allegedly faulty workmanship. Atlantic argues the policy treats subcontractors' work the same as Brunner's work and, therefore, property damage resulting from the subcontractors' allegedly faulty workmanship is excluded from coverage by Exclusion 2(j)(6).[3] However, as discussed above with respect to Brunner's own alleged faulty workmanship, the Products-completed operations hazard restores coverage for property damage that occurs after the work is completed. Here, the record is unclear as to when the alleged property damage occurred. Accordingly, summary judgment is improper on Atlantic's duty to indemnify Brunner for the subcontractors' allegedly faulty workmanship.

## CONCLUSION

IT IS ORDERED that Brunner's motion for partial summary judgment (Doc. 50) is GRANTED. Atlantic has a duty to defend Brunner against all claims in the underlying lawsuit by the Quinns, Cause No. DV-17-960 in Montana Fourth Judicial District Court, Missoula County.

---

[3] The parties agree Endorsement AGL-130 09 13, (Doc. 24-2 at 75), does not exclude claims arising from the subcontractors' work.

IT IS FURTHER ORDERED that Atlantic's motions for summary judgment (Docs. 23, 30) are GRANTED IN PART as follows:

1. Atlantic has no duty to indemnify Brunner for the liquidated damages accruing at .5% of the contract price per day alleged in Count III of the underlying complaint.

2. Atlantic has no duty to indemnify Brunner for the breach of warranty claims alleged in Count IV of the underlying complaint.

3. Atlantic has no duty to indemnify Brunner for the violations of the Montana Consumer Protection Act alleged in Count VIII of the underlying complaint.

4. Atlantic has no duty to indemnify Brunner for the emotional distress claims alleged in Count IX of the underlying complaint.

5. Atlantic has no duty to indemnify Brunner for the unjust enrichment claim alleged in Count X of the underlying complaint.

The motions (Docs. 23, 30) are DENIED in all other respects.

DATED this 20th day of June, 2019.

_____
Donald W. Molloy, District Judge
United States District Court